UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| MICHAEL TIDENBURG, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 4:05-cv-58 |
| ) | (4:04-cr-3) |
| v. ) | *Edgar* |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM**

Petitioner Michael Tidenburg has filed a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). [Court Doc. No. 1]. The Government opposes Tidenburg's motion. [Court Doc. No. 6]. As stated *infra*, this court has concluded that a hearing is not necessary and that Tidenburg's Section 2255 motion is without merit and will be **DENIED**.

**I.     Procedural History and Background Facts**

On January 27, 2004, a United States grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, returned a seven count indictment against Tidenburg charging him with two counts relating to conduct occurring on October 13, 2003, four counts relating to conduct occurring on December 11, 2003 and one count relating to conduct occurring on January 23, 2004. *See* [Crim. Court Doc. No. 1, Indictment, *United States v. Tidenburg*, 4:04cr3]. The conduct relating to events occurring on October 13, 2003 included one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count alleging possession

with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Counts three through six all involved being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Count seven of the indictment related to possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) on or about January 23, 2004. The indictment concerned possession of methamphetamine with intent to distribute it between October of 2003 and January of 2004.

During the rearraignment hearing on March 19, 2004 the government outlined the following facts relating to the charges made in the indictment:

> On October the 13th, 2003, a Warren County Sheriff's deputy was going to eat at the Waffle House when he smelled a meth lab or meth lab odor emanating from the defendant's truck. He used the drug dog on the truck, the dog alerted. The officer then searched the truck and found a meth lab and a small amount of finished product inside. He arrested Mr. Tidenburg at the time. He towed the truck as a result of the arrest.
> Two days later he received information that he missed some methamphetamine in the truck in the air bag compartment on the passenger side. The officer did not get a warrant, but he did search the truck and found in that secret compartment a black bag containing seven-and-a-half grams of methamphetamine, syringes, digital scales, a loaded Taurus .45 caliber pistol, and some marijuana.
> The defendant made bond on the state charges, then skipped. Warrants were issued for his arrest. On December 11, 2003, another Warren County Sheriff's Department officer, Kevin Murphy, spotted the defendant in a Blazer traveling north on Shellsford Road. This officer and another deputy tried to pull over the defendant based upon the warrants. The Blazer slowed down and a Marlin .22 caliber Hornady Magnum rifle came out of the vehicle. The deputy thought that it came from the passenger side. Sheriff's Deputy Murphy was able to retrieve the gun. The Blazer was eventually stopped. The defendant fled. The deputy searched the woods for the defendant. And while doing so, he found a Ruger .357 caliber handgun on the ground in the woods, also, a Titans ball cap, and a black toboggan, and then the defendant all lined up in a row. The defendant later claimed what was found in the woods. He also had a .22 caliber Hornady Magnum ammunition in his pocket, 27 rounds from a 50-round box. He also had a stun gun. Both the rifle and the Ruger were loaded.
> On January 23rd of this year, Deputy Murphy executed a search warrant at a trailer rented in the name of Jeffrey Martin. The deputy had information that

-2-

the defendant had been cooking methamphetamine there. When he first got the information that a citizen had seen the defendant with a pistol with white grips on it, he also got information from a couple of other folks that said the defendant was cooking methamphetamine out in the trailer. Murphy went to a location and saw the defendant's vehicle in a carwash bay and went to talk to him, but the defendant left before he got to him. In the bay where the car had been Murphy found on the ground, still dry, some blister packs that had contained some sinus medication. This Court is familiar with the fact that cold tablets or sinus medication contain ephedrine or pseudoephedrine. In addition, in the garbage can by the bay were several empty boxes of cold tablets which contained ephedrine. Murphy went out to the trailer to conduct surveillance and he smelled a meth lab so he got a search warrant.

      Once he executed the warrant, it was determined that the defendant was present inside of the trailer, and was found approximately in possession of approximately 10 grams of methamphetamine, two loaded handguns, one with white grips, a bag of ammunition, as well as electric scales, along with a couple of hundred dollars in cash. There were pictures in the trailer and things that belonged to the defendant inside of the trailer indicating that he had been there for a period of time. Nothing in the trailer tied it to the man [who] rented it, Mr. Jeffrey Martin.

      The defendant has previous felony convictions, including prior felony drug convictions.

      All of the events occurred in the Eastern District of Tennessee. The guns were manufactured outside of the state, and, therefore, traveled in interstate commerce.

Rearraignment Proceedings, pp. 16-18. Tidenburg's attorney objected to the presentation of facts at the rearraignment, but indicated that he did not think his objections would "affect the guidelines." *Id.* at 19. The attorney objected to the government's description of the items found in Tidenburg's truck as a "meth lab." *Id.* His counsel further objected to the description of the handguns found on January 23rd both being loaded, and he preserved his right to object to Tidenburg's prior convictions. *Id.* at 20.

Following the description of the crimes committed by Petitioner, the court asked Petitioner if he was pleading guilty because he was guilty. Rearraignment Proceedings, p. 21. Tidenburg responded, "Yes, sir." *Id.* The plea agreement entered by the parties specified that

Petitioner would plead guilty to Counts One and Two in exchange for the Government's dismissal of Counts Three through Seven of the Indictment. *See* Plea Agreement, ¶¶ 1-3.

Following Tidenburg's guilty plea the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR indicated that:

> The official forensic chemistry reports from the Tennessee Bureau of Investigation Crime Laboratory indicate that on October 13, 2003, there were 4.6 grams of methamphetamine and 15.2 grams of marijuana seized. Reports indicate that on January 23, 2004, there were 9.7 grams of methamphetamine, and 69.5 grams of marijuana seized. In addition, there were 156 pills of Sudafed seized on January 23, 2004.

PSR, p. 5 ¶ 11. The drug quantity totals associated with Defendant's crime were: 84.7 grams of marijuana; 14.3 grams of methamphetamine; 156 pills of Sudafed for a total of 151.09 kilograms of marijuana equivalent.

In calculating the base offense level for the violation of 18 U.S.C. 922(g)(1) for being a felon in possession of a firearm, the PSR determined, based on § 2K2.1(a)(2) of the United States Sentencing Guidelines ("U.S.S.G."), that the base offense level should be 24 due to Tidenburg's two prior felony convictions for controlled substances. The PSR noted that "[t]he defendant was convicted on January 12, 2001, of Possession With Intent to Distribute Marijuana, in the Superior Court of Lowndes County, Georgia, Docket Number 2000-CR-1139A. The defendant was also convicted on September 11, 2002, of Possession of Schedule II Drugs for Resale, in the Criminal/Circuit Court of Warren County, Tennessee, Docket Number F9070." The PSR also recommended increasing the base offense level by two levels due to defendant's possession of five firearms related to the crimes charged in the indictment and four levels for possession of a firearm in connection with the possession with intent to distribute methamphetamine. PSR, p. 6, ¶¶ 17-18. The PSR recommended an adjusted offense level of 30

for Count One.

For Count Two the PSR recommended a base offense level of 26 based on U.S.S.G § 2D1.1(c)(7) and the calculated drug quantity of 151.09 kilograms. PSR, p. 6, ¶ 23. The PSR recommended a 2 point increase for possession of a firearm while committing the offense and a 2 point increase for having a methamphetamine laboratory in his truck for a total offense level of 30. *Id.* at ¶¶ 24, 25, 29. The PSR also recommended a 3 point reduction for acceptance of responsibility and timely notification to authorities of his intent to plead guilty for a final offense level of 27. *Id.* at ¶ 32. The PSR further calculated Petitioner's criminal history as category V. *Id.* at ¶ 48.

Tidenburg's attorney filed objections to the PSR objecting to the PSR's calculation of the offense levels for Counts One and Two based on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004). *See* [Crim. Ct. Doc. No. 26]. Counsel argued that Mr. Tidenburg should only be sentenced based on the conduct that he admitted to in the plea agreement.

During the sentencing hearing on July 30, 2004, Petitioner's counsel outlined for the court his objection pertaining to the sentencing guidelines:

> Essentially, Judge, it's a *Blakely* objection. This case is somewhat different as far as the *Blakely* objection goes compared to other ones that have been in front of you today in the sense that he is under the presentence report, he's calculated out at Level 27, category five, which is 120 months to 150 months. Our opinion is under the *Blakely* objection using the facts that he admitted to during the plea, and obviously, the elements of the offenses to the crimes that he pled to under 922(g), it's our opinion he ought to be a Level 12.
> Now the presentence report, I believe, places him at 24, and that's based upon his having a prior felony offense. We object under *Blakely* to making him a 24. I think the Court has to make additional findings other than simply the fact that it's a prior felony, and the Court has to make a finding that it's a crime of violence or controlled substance offense. I understand from other attorneys that Your Honor has kind of already breached that subject with a career offender case, but, for the record, I do make that objection.

> The other offense, of course, is 841(b)(1)(C), based upon what was admitted in the plea agreement, there is a statement in there about the approximate amount of methamphetamine that was found in a vehicle owned by Mr. Tidenburg, and we agreed to that, but, subsequently, we were given through discovery by the government the actual lab results which came back to be a smaller amount. And that amount calculated out to a Level 18. The 922 and the (b)(1)(C), of course, would be grouped together, which would put him according to our calculation after he gets three off for acceptance to Level 15, category . . . . Five . . . Thirty-seven to 46 [months] . . . .

Judgment Proceedings, pp. 5-7. The court agreed to remove the two enhancements added to Count One and removed an additional two levels for acceptance of responsibility leaving the Petitioner with an adjusted offense level of 22 on Count One. *Id.* at 10, 11. The court determined that Petitioner's criminal history category was five. *Id.* at 12. It then sentenced Petitioner to a term of imprisonment of 96 months on each of Counts One and Two to be served concurrently. *Id.* at 17. The court further noted that if the sentence were to be imposed pursuant to the Court's full discretion, the sentence would be 150 months of imprisonment. *Id.* at 18.

Petitioner has timely filed his Section 2255 motion. [Civ. Ct. Doc. No. 1]. Petitioner first claims that he was denied effective assistance of counsel because his trial counsel failed to object to and investigate one of his prior criminal convictions for a controlled substance offense. Petitioner's second claim of error is that the court violated his Sixth Amendment right by using his criminal history to enhance his sentence without having such history proved to a jury.

**II.    Standard of Review**

28 U.S.C. § 2255 states in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the

sentence.

28 U.S.C. § 2255; *see also, Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). As the Sixth Circuit has held, "[i]n order to prevail upon a section 2255 motion, the petitioners 'must allege one of three bases: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Moss*, 323 F.3d at 454 (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Petitioner Tidenburg did not file a direct appeal, and he is now seeking collateral review for what he claims to have been errors of constitutional magnitude. The Sixth Circuit has held that "[o]n collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict. It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427 (6th Cir. 1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Frady*, 456 U.S. 152, 166 (1982)). Petitioners must "show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair*, 157 F.3d at 430 (quoting *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

Further,

> [w]hen a section 2255 petitioner has procedurally defaulted his contentions by failing to assert them on direct appeal or via a previously litigated habeas application, he must further either prove (1) that he possessed good cause for failing to do so and would suffer actual prejudice if his averments are deemed precluded, or (2) that he is actually innocent of the subject offense.

*Fair*, 157 F.3d at 430 (citing *Bouseley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611

-7-

(1998) (other citations omitted)).

**III. Analysis**

    **A. Ineffective Assistance of Counsel**

Petitioner Tidenburg is now seeking collateral review for what he claims to have been ineffective assistance of counsel. Criminal defendants are entitled to the assistance of counsel for their defense pursuant to the Sixth Amendment of the U.S. Constitution. U.S. Const. amend. VI; *see also*, *Moss*, 323 F.3d at 454. A right that is derivative of the right to counsel is the right to have effective assistance of counsel. *Moss*, 323 F.3d at 454; *see also, Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The "benchmark of effectiveness 'must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000) (quoting *Strickland*, 466 U.S. at 686).

In *Hofbauer* the Sixth Circuit explained the two-part test for ineffective assistance of counsel as described in *Strickland*:

> First a defendant must show that counsel's performance was 'deficient,' involving 'errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' . . . . Second, even if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. To make this showing, the defendant must demonstrate that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

*Hofbauer*, 228 F.3d at 702 (quotations omitted).

Within the context of a guilty plea, the Sixth Circuit has noted:

> In order to show that deficient performance prejudiced the defense when a defendant pleads guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

-8-

would have insisted on going to trial." A defendant can meet this burden by showing, for example, that there was an "affirmative defense," such as an insanity defense, that "likely would have succeeded at trial," or by showing that he or she was not competent to plead guilty. A defendant is competent if he or she "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him."

*Stewart v. Morgan*, 2007 WL 1451974 *4 (6th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Dusky v. United States*, 362 U.S. 402, 402 (1960) and citing *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001); *Eddmonds v. Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996)).

Tidenburg alleges that his counsel failed to render effective assistance by failing to object to alleged increases in penalty for sentencing purposes based on facts not proven to the jury beyond a reasonable doubt, relying on *Blakely v. Washington*. 542 U.S. 296 (2004). He argues that his counsel failed to investigate the two prior felony convictions used to enhance his sentence. In his reply brief Petitioner clarifies that although his counsel may have objected to the base level enhancements, he allegedly failed to object to two prior convictions used to establish Petitioner's base offense level of 24.

Petitioner specifically objects to the use of his prior conviction for possession of marijuana with the intent to distribute for which he pled guilty in Lowndes County Superior Court in Lowndes County, Georgia in 2000. Petitioner received a sentence of three years of probation. He argues that this sentence of three years of probation indicates that this prior crime does not meet the definition of "controlled substance offense" in U.S.S.G. § 2K2.1, the guideline used for sentencing violations of 18 U.S.C. § 922(g).

U.S.S.G. § 2K2.1 states in relevant part: "(a) Base Offense Level (Apply the Greatest): . . . (2) **24**, if the defendant committed any part of the instant offense subsequent to sustaining at

least two felony convictions of either a crime of violence or a controlled substance offense; . . ."

The Application Notes to U.S.S.G. § 2K2.1 state that:

> 5. For purposes of this guideline:
> "Controlled substance offense" has the meaning given that term in § 4B1.2(b) and Application Note 1 of the Commentary to §4B1.2 (Definitions of Terms Used in Section 4B1.1).
> "Crime of violence" has the meaning given that term in §4B1.2(a) and Application Note 1 of the Commentary to §4B1.2.
> "Felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and *regardless of the actual sentence imposed*. A conviction for an offense committed at age eighteen years or older is an adult conviction. . . .

U.S.S.G. §2K2.1, Application Notes, No. 5 (emphasis added).

"Controlled substance offense" under U.S.S.G. § 4B1.2 is defined as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the . . . possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2.

Under Georgia law, "[i]t is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, purchase, sell or possess with intent to distribute marijuana." GA. CODE ANN. § 16-13-30(j)(1). Further, Georgia law provides that "[e]xcept as otherwise provided in subsection (c) of Code Section 16-13-31 or in Code Section 16-13-2, any person who violates this subsection shall be guilty of a felony and, upon conviction therefor, shall be punished by imprisonment for not less than one year nor more than ten years." GA. CODE ANN. § 16-13-30(j)(2).

Petitioner's prior crime involved possession with intent to distribute marijuana in 2000 when he was 23 years old. *See* PSR, p. 10, ¶ 40. He admits in his reply brief that the conviction

-10-

involved a charge of possessing two ounces of marijuana. Georgia law classifies mere possession of marijuana as possession of less than one ounce of marijuana. *See* GA. CODE ANN. § 16-13-2(b). Thus, Petitioner's crime was *punishable* by a term of not less than one year pursuant to GA. CODE ANN. § 16-13-30(j)(2). Indeed the definition of "felony conviction" in the Application Notes of U.S.S.G. § 2K2.1 emphasizes that a prior conviction is included if it was punishable by "imprisonment for a term exceeding one year, . . . regardless of the actual sentence imposed." U.S.S.G. § 2K2.1, Application Notes, No. 5. Thus, it is irrelevant that Petitioner only received a sentence of three years of probation; his crime could have received a punishment of anywhere from one year to ten years under Georgia law. GA. CODE ANN. § 16-13-30(j)(2).

Therefore, there was no reason to object to the use of the prior conviction for possession of marijuana with intent to distribute based on its failure to meet the definition of "felony conviction" under U.S.S.G. § 2K2.1. Petitioner's counsel was not ineffective for failing to make a baseless objection. This court has formerly held that "[c]ounsel's failure to raise a meritless objection is not deficient performance." *Hodge v. United States*, No. 4:06-cv-52, 2008 WL 4980888, *6 (E.D. Tenn. Nov. 24, 2008). Further, Petitioner's counsel did make several objections to this court both in his written objections to the PSR and during the Judgment Proceedings. Petitioner's counsel specifically stated that "I think the Court has to make additional findings other than simply the fact that it's a prior felony, and the Court has to make a finding that it's a crime of violence or controlled substance offense." Judgment Proceedings, p. 6. Petitioner's counsel provided effective assistance by making several objections to the imposition of Petitioner's sentence based on the holding of *Blakely v. Washington*. *See id.* at 5-6. The court concludes that Petitioner has failed to sustain his burden of demonstrating

-11-

ineffective assistance of counsel. This claim will therefore be **DISMISSED**.

### B. Objections Based on Calculation of Criminal History Points

Petitioner also objects to this court's calculation of his criminal history category of V. Petitioner failed to raise this objection on a direct appeal. As stated *supra*, when a petitioner fails to assert a claim on direct appeal, he must demonstrate either good cause for the failure to do so and actual prejudice or he must demonstrate actual innocence of the offense. *Fair*, 157 F.3d at 430 (citing *Bouseley*, 523 U.S. at 622, 118 S.Ct. at 1611) (other citations omitted)). Petitioner has not met this burden in this case.

Petitioner claims that he was prejudiced because he was entitled to have a jury of his peers determine whether he committed the past crimes to establish his criminal history category. He relies on *Shepard v. United States* in support of his position. 544 U.S. 13, 125 S.Ct. 1254 (2005). In *Shepard* the Supreme Court addressed what documents could be used to consider whether a plea of guilty to burglary included admitted elements for the generic offense of burglary as it related to determining a sentence pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Pursuant to the ACCA, a burglary is only a violent felony if it is committed in a building or an enclosed space, known as "generic burglary," rather than on a boat or a motor vehicle. *Id.* at 16, 125 S.Ct. at 1257. The Act "mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies." *Id.* at 15, 125 S.Ct. at 1257. The Supreme Court held that "enquiry under the ACCA to determine whether a plea of guilty defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the

factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26, 125 S.Ct. at 1263.

Petitioner asserts that *Shepard* overruled the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219 (1998), and he suggests that his prior criminal record must have been proven to a jury beyond a reasonable doubt. In *Almendarez-Torres* the Supreme Court addressed two different provisions of 8 U.S.C. § 1326. *Id.* at 226. The statute provides for imprisonment of up to two years of an illegal alien who was deported from the United States and who returns without special permission. *See* 8 U.S.C. § 1326(a). Another provision of the statute provides for a prison term of up to twenty years if the illegal alien's deportation was subsequent to a conviction for commission of an aggravated felony. 8 U.S.C. §1326(b)(2). The Court addressed whether the "latter provision defines a separate crime or simply authorizes an enhanced penalty." *Id.* The Court "conclude[d] that the subsection is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment." *Id.* at 226-27.

In *Apprendi v. New Jersey* the U.S. Supreme Court held that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S.Ct. 2348 (2000) (emphasis added). In *Apprendi* Justice Thomas indeed backed away from his concurring decision in *Almendarez-Torres*. 530 U.S. at 520-21 (Thomas, J., concurring).

-13-

In *Blakely* the Supreme Court held that the defendant's sentence violated the defendant's Sixth Amendment right to a jury trial where the court sentenced him to prison for more than three years beyond the maximum sentence for the crime to which he confessed based on a disputed issue of fact. 542 U.S. at 313-314. In *Booker v. Washington* the Supreme Court reaffirmed its holding in *Apprendi* and invalidated provisions of the Sentencing Reform Act that made the United States Sentencing Guidelines mandatory, instead making the Guidelines advisory. 543 U.S. 220, 244-245 (2005). However, the holding in *Amendarez-Torres* that a prior conviction does not have to be proven to a jury was not overruled. *See e.g.*, *United States v. Hutchins*, Nos. 07-2505, 07-3841, 07-4533, 2009 WL 1789474, *4 (6th Cir. June 25, 2009).

Since the decisions in *Apprendi, Blakely,* and *Booker* lower courts have had time to decipher how prior convictions can be used with respect to sentencing decisions. For example, in *United States v. Gates* the Sixth Circuit discussed judicial fact-finding in the post-*Booker* world. The Court noted:

> In *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006), we stated that judicial fact-finding for sentencing purposes must continue as it was conducted prior to *Booker*, under a preponderance of the evidence standard. . . .
> We find that the district court committed no Fifth or Sixth Amendment violation when it used a preponderance of the evidence standard. Prior to *Booker*, the sentencing guidelines called for the use of a preponderance of the evidence standard at sentencing "to meet due process requirements and policy concerns," U.S.S.G. § 6A1.3, and this court held that the requirements of due process were met when courts engaged in fact-finding using a preponderance of the evidence standard. . . . Following *Booker*, we stated in *United States v. Milan*, 398 F.3d 445, 455-56 (6th Cir. 2005): "Indeed, the Supreme Court severed and excised 18 U.S.C. § 3553(b)(1) which required district courts to sentence defendants 'within the applicable Guidelines range' but recognized that the 'remainder of the [Sentencing Reform Act] functions independently.'" In *Milan*, we considered the defendant's Sixth Amendment challenge to his sentence, but the rationale underpinning the holding is equally applicable to [petitioner's] Fifth Amendment challenge. Therefore, we find that judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate

-14-

either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury.

461 F.3d 703, 708 (6th Cir. 2006). In *United States v. Barnett* the Sixth Circuit again addressed whether prior convictions had to be proven before a jury:

> In *Apprendi*, the Supreme Court expressly excepted the fact of a prior conviction from the rule requiring issues of fact that increase a defendant's penalty to be submitted to the jury. This Court, among others, has rejected the argument that *Apprendi* requires the nature of prior convictions to be determined by a jury, holding instead that the district court's authority to determine the existence of prior convictions was broad enough to include determinations regarding the nature of those prior convictions. . . .
>
> there is no language in *Booker* suggesting that the Supreme Court, as part of its remedial scheme adopted in that case, intended to alter the exception to *Apprendi* allowing district courts to consider the fact and nature of prior convictions without submitting those issues to the jury.

398 F.3d 516, 525-26 (6th Cir. 2005) (citing *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348). *See also, United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005) (noting that "[e]ven had the parties disputed the fact of [defendant's] prior convictions, moreover, his sentence stems from the very type of recidivism enhancement that *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), held need not be charged and proved before a jury. From *Apprendi* to *Blakely* to *Booker*, the Court has continued to except such factfinding from the requirements of the Sixth Amendment"); *United States v. Martinez*, 430 F.3d 317, 343 (6th Cir. 2005) (finding that "[t]he career offender enhancement is based on the fact of his prior convictions and does not violate the Sixth Amendment"); *United States v. Hutchins*, Nos. 07-2505, 07-3841, 07-4533, 2009 WL 1789474, *4 (6th Cir. June 25, 2009) (asserting that "the holding in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that the fact of a prior conviction is not a jury issue, is still the law").

-15-

Thus, under the current law in this Circuit, judicial fact-finding by a preponderance of the evidence at the sentencing stage post-*Booker* does not violate the Sixth Amendment to the United States Constitution. Petitioner did not have the right to have his criminal history proven to a jury beyond a reasonable doubt. Thus, his second claim of error is without merit because he has not demonstrated that he was prejudiced as there was no error in determining Petitioner's criminal history category. Nor does Petitioner provide any evidence of actual innocence. Therefore, this claim will be **DISMISSED**.

**IV.    Conclusion**

As stated *supra*, Petitioner's claims of error in his sentencing made in his Section 2255 motion are without merit and will be **DISMISSED**. Plaintiff's Section 2255 motion will be **DENIED**.

A separate judgment will enter.


                           */s/ R. Allan Edgar*
                           R. ALLAN EDGAR
               UNITED STATES DISTRICT JUDGE